IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| STEVEN LEE ANDERSON, #286382, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. 2:18-cv-545-WKW-CWB |
| WARDEN JONES, et al., | ) ) ) |
| Defendants. | ) ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.    Procedural Background**

Steven Lee Anderson filed this action under 42 U.S.C. § 1983 to seek redress for alleged constitutional violations occurring at Ventress Correctional Facility. (Doc. 1). The operative complaint is the Amended Complaint filed on July 16, 2018. (Docs. 13 & 15). Named as defendants are Karla Jones (Warden), Kenneth Drake (Correctional Captain), Ezzie Woods (Classification Specialist), Bradley Walker (Correctional Lieutenant), Jacob Peters (Correctional Sergeant), and Josiah Haggins (Correctional Sergeant). (Doc. 39 at pp. 1-2, ¶¶ 2-7). Anderson alleges that the defendants failed to protect him from attack after being informed that a "hit" had been placed on him. (Doc. 13 at p. 3). For relief, Anderson requests $200,000 in damages. (*Id*. at p. 4).

The defendants in turn jointly filed an Answer and Special Report that included relevant evidentiary materials (*e.g.*, affidavits, prison documents, and medical records). (Docs. 39 & 68). After reviewing the Answer and Special Report, the court directed Anderson to file a written response supported by affidavits or other statements made under penalty of perjury. (Doc. 41). Anderson thereafter filed a complying response (Doc. 44) and supplement (Doc. 67).

1

The parties previously were given notice that "the court may at any time [after expiration of the time for Anderson to file a response] and without further notice to the parties (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response …, rule on the motion for summary judgment in accordance with the law." (Doc. 41 at p. 3). Pursuant to that disclosure, the undersigned will now treat the defendants' Answer and Special Report as having presented arguments for summary judgment and will recommend that summary judgment be granted in favor of the defendants on all claims.

## II.     Summary Judgment Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party … . [A fact] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied that burden, the nonmovant is required to cite portions of the record showing a genuine dispute of material fact. *Id.* at 324. The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish a genuine dispute of material fact, the nonmovant must produce evidence such that a reasonable trier of fact could return a verdict in his favor. *See Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

In determining whether a genuine dispute of material fact exists, the court must view all of the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Relevant Facts[1]

On May 6, 2018, Anderson became involved in an altercation with inmate Barry Cates at Ventress Correctional Facility. (Doc. 69-7). The altercation occurred inside Anderson's dormitory. (Doc. 67-1 at p. 1). According to Anderson, Cates "said he was going to kill me," "drew his knife," and "started sticking me with it." (Doc. 69-1 at p. 1; *see also* Doc. 67-1). Unlike Anderson, Cates was not assigned to the dormitory where the altercation occurred. (Doc. 67-1 at p. 1).

An official Incident Report confirms the altercation but recorded it as follows:

> While in Dormitory F, Inmate Cates began behaving disorderly, moving benches and horse playing with other inmates. Inmate [Anderson] approached inmate Cates with intent to stop him. Inmate Cates then retrieved an inmate made knife from his pocket and struck inmate Anderson several times. Inmate Anderson wrestled the knife from inmate Cates. Inmate Anderson retrieved the knife from the floor and

---

[1] Where facts are in dispute, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992). Accordingly, the "facts" as set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.") (citation omitted). The undersigned also notes that the Amended Complaint was verified by Anderson and thus constitutes admissible evidence on summary judgment. *See, e.g., Walker v. Poveda*, 735 F. App'x 690 (11th Cir. 2018) ("[Plaintiff] verified his complaint … in accordance with 28 U.S.C. § 1746 by attesting to the truth of his factual assertions under penalty of perjury, and we have held that pleadings verified under § 1746 are admissible (and may substitute for sworn affidavits) on summary judgment.").

  struck inmate Cates several times.  An unidentified inmate approached both inmates, during which time inmate Cates proceeded to run out of the dorm.

(Doc. 39-1 at pp. 2-3).  Cates was administered a single burst of chemical agent after fleeing the dormitory and was restrained.  (*Id*. at p. 2).  Anderson also was restrained after the altercation.  (*Id*. at p. 3).  Both Anderson and Cates were assessed and found to have sustained minor injuries.  (*Id*.; *see also id*. at pp. 8-9).

  At the time of the altercation, Anderson was serving a term of imprisonment for murder.  (Doc. 67 at p. 2).  Anderson contends that he was attacked by Cates as the result of a "hit" that had been placed on him by the family of his murder victim.  (Doc. 13 at p. 3).  Anderson cites the fact that Cates was found to be in possession of additional knives and a plethora of drugs as evidence he had been paid to carry out the attack.  (Doc. 67 at p. 7; Doc. 69-1 at p. 2).[2]

  Anderson's written submissions have been consistent in asserting that he on numerous occasions made each of the defendants aware of his belief that a "hit" had been placed on him and that he feared for his safety.  The Amended Complaint filed on July 16, 2018 contains the following allegation in that regard:

---

[2] The Incident Report reflects the following drug-related items to have been found on Cates after the altercation: "[o]ne (1) bag of synthetic marijuana; one (1) bag of unknown drug paraphernalia; twelve (12) rolled cigarettes containing an unknown substance; seven (7) strips which appeared to be Ice; and one (1) package of green leafy substance."  (Doc. 39-1 at pp. 2-3).  The record is inconsistent as to how many knives were retrieved from Cates. The narrative section of the Incident Report and a separate Investigative Report both enumerate "one (1) inmate made knife, approximately five (5) inches in length, sharpened to a point on one end and wrapped in black tape on the other end."  (Doc. 39-1 at pp. 3-4).  However, the physical evidence portion of the Incident Report, as well as a separate Evidence Form, both indicate that three knives were recovered, including also "one (1) inmate made knife, approximately eight (8) inches in length, sharpened to a point on one end and wrapped in green rubber on the handle end" and "[o]ne (1) inmate made knife made from altered scissors, approximately six (6) inches in length, sharpened to a point on one end and wrapped in white shoe strings on the handle end." (Doc. 39-1 at pp. 2 & 5).  It is unclear which of the identified knives was used in the altercation or whether such knives were in addition to the one used in the altercation.

> STATE BRIEFLY THE FACTS WHICH SUPPORT THIS GROUND. (State as best you can the time, place, and manner and person involved.) My classification Ms Wood I kept go [sic] up to minerstration [sic] telling Captain Drake Lieutenant Walker Sergeant Peters and Sergeant Haggins and Warden Jones when she was warden at Ventress corr facility the victim [sic] family and friends had A hit on Me they wouldn't help seriously.

(Doc. 13 at p. 3). In his first response to the defendants' Answer and Special Report, Anderson again asserted the same core allegation:

> Anderson had previously forewarned the warden, captain, lieutenant and 2 sergeants that he foresaw a problem because Neco Bailey, the son of the man he killed was finding it hard to come to grips with he and Anderson being in the same prison. So word had leaked out that the Bailey family had put a hit out on Anderson's life.

(Doc. 67 at p. 4); and

> I informed them all [the defendants] on a regular basis that my life was in danger because of the "hit" that was put out on me.

(*Id*. at p. 6).[3] Anderson also submitted two sworn affidavits to the same effect:

> I went to the warden (Ms. Jones), to the captain (K Drake), the lieutenant (B Walker), to the Sergeant (J Haggins) and to Classification about my concerns about my safety. … I wrote several request slips about my belief that the rumors about the "hit" was valid.

(Doc. 67-1 at p. 2); and

> I had told the Defendants in advance of this incident on numerous occasions how I had been hearing a "hit" was out on my head. … Each Defendant that I named I told about my fears.

(Doc. 69-1 at pp. 1-2). Anderson additionally asserts that he on multiple occasions had requested

---

[3] Anderson's first response (Doc. 67) was verified such that the facts contained therein can be considered. *Sammons v. Taylor,* 967 F.2d 1533, 1545 n.5 (11th Cir.1992) ("[F]acts alleged in an inmate's sworn pleading are sufficient and ... a separate affidavit is not necessary."). Anderson's second response (Doc. 69), however, was not verified. The undersigned therefore has only considered the factual averments contained within the sworn affidavit that Anderson submitted therewith. (Doc. 69-1). *See Black v. Alabama Dep't of Corrections*, 578 F. App'x 794, 796 n. 2 (11th Cir. 2014).

to be either "transferred to another prison or locked up in segregation for his own safety." (Doc. 67 at pp. 2-3; Doc. 67-1 at p. 2; Doc. 69-1 at p. 2).

Prison records from December 2015 reflect that inmate Neco Bailey was the son of Anderson's victim and had "started making threats toward inmate Steven Anderson … because Anderson killed his father." (Doc. 39-2 at p. 6). Anderson and inmate Bailey were thus classified as "enemies," and it was noted that "[f]or the Safety and Security of the institution these inmates should not be housed together." (*Id.* at p. 5). It appears that inmate Bailey was then transferred from Ventress to a different facility. (Doc. 69-1 at p. 2).

Anderson likewise was transferred during or about August 2017 but returned to Ventress in approximately February 2018. (Doc. 39-3 at pp. 7-8). Interview records reflect that Anderson thereafter made the following report to Classification Specialist Woods in April 2018:

> Open House. Inmate Anderson was back for a new round of they are out to get me. Specialist told inmate Anderson that the names would have to be given and incidents that are verified would be needed as evidence. Inmate Anderson gave the name Lacorey Russell. No evidence to link inmate Russell to inmate Anderson found at this time.

(Doc. 39-3 at p. 8). A similar complaint appears in Woods's notes from her interview with Anderson in February 2015—prior to the transfer of inmate Bailey to a different facility:

> Face to Face/Open House. [Anderson] stated that he feels threatened because friends/cousins of inmate Neco Bailey came to him and made statements regarding inmate Anderson's current Murder Case. The victim in this case was inmate Bailey's father. … Inmate Anderson would not give information as to the identities of the inmates whom he was uneasy about. Inmate Anderson was advised … that his feeling uncomfortable was not a valid enough reason to say he needs to be removed from population. Inmate Anderson made the statement "I may as well cut myself." …

(Doc. 39-3 at p. 7). For their parts, Warden Jones (Doc. 68-1), Lieutenant Walker (Doc. 39-12 at p. 1), Captain Drake (Doc. 39-13 at p. 1), Sergeant Haggins (Doc. 39-4 at p. 1), and Sergeant Peters (Doc. 39-11 at p. 1) have all denied knowledge about a "hit" or other threats against Anderson.

6

After an investigation into the altercation with Cates, Anderson was issued a disciplinary for fighting with a weapon, was reclassified to a higher custody level, and was transferred to Holman Correctional Facility. (Doc. 39-3 at pp. 3-5; Doc. 39-14). Anderson claims that the transfer was in "retaliation" for the filing of this lawsuit. (Doc. 67 at p. 3).[4]

## IV. Discussion

### A. Eleventh Amendment immunity bars Anderson's claims for damages against all of the defendants in their official capacities.

An official capacity suit is "in all respects other than name, … treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a state employee may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). The Eleventh Circuit has specifically recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, to the extent Anderson might be seeking monetary damages from the defendants in their official capacities, all of the defendants are entitled to sovereign immunity. *See, e.g., Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277-78 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment against suits for damages); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from a state official sued in his official capacity); *see also Carr*, 916 F.2d at 1525 n.3.

---

[4] Cates also was disciplined as a result of the altercation. (Doc. 39-1 at p. 3).

7

> **B.   Anderson has failed to present sufficient evidence that he faced a "strong likelihood" of serious harm.**

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations omitted); *see also Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) ("[I]t is well settled that a prison inmate has a constitutional right to be protected … from physical assault by other inmates."). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834; *Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016). Prison officials only violate the Eighth Amendment duty to protect prisoners from attack when they show "'deliberate indifference' to a substantial risk of serious harm." *Farmer*, 511 U.S. at 836; *see also Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). To survive summary judgment on such a claim, a plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Carter*, 352 F.3d at 1349 (quoting *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.1995)). As critical to the Eighth Amendment analysis in this case, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [prison official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). Whether a "strong likelihood" objectively exists cannot be based on hindsight but instead "is a prospective determination of what might happen based upon events that have already occurred." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) ("[A] substantial risk of serious harm, is evaluated using an objective standard. … The mere fact that an event takes place does not indicate how likely it was to occur.").

8

The Eleventh Circuit has had many occasions to address deliberate indifference claims in a variety of inmate-assault contexts. The undersigned finds one of the more recent decisions to be controlling on the facts now presented. *See Marbury v. Warden*, 936 F.3d 1227 (11th Cir. 2019) (per curiam). For the reasons explained below, *Marbury* compels entry of summary judgment in favor of the defendants.

The plaintiff in *Marbury* "was attacked by a fellow inmate after making multiple requests to be transferred to a different dormitory or put in protective lock-up." *Id*. at 1231. The evidence established that he specifically asked to be protected "because he had heard from a friend that another inmate wanted to hurt him." *Id*. at 1231-32. The involved correctional officer allegedly responded by stating: "[D]o you really think I'ma [sic] act upon your requests, after you've filed complaints and requests against me" and "You don't have a shank, ... you need to get one, [because you aren't] going to lock-up, there's no cells available, so seem[s] like to me you've got a problem." *Id*. The evidence further established that the plaintiff even wrote the warden to express that "I was told by a friend to watch my back, because he got word someone was out to do harm to me" and to request that he be placed in lock-up because he was "in fear of [being] hurt or possibl[y] killed." *Id*. at 1232. According to the plaintiff, the warden laughed and told him to get a knife. *Id*. Approximately five days later, the plaintiff was stabbed and hit in the face by another inmate—suffering multiple stab wounds and a broken nose. *Id*.

On appeal, a panel majority addressed the issue of deliberate indifference at length before affirming entry of summary judgment in favor of the defendants. *Id*. at 1232-1238. The dispositive issue in *Marbury* was framed as "whether a reasonable jury could find [the plaintiff's] statement that he had heard from a friend that an unnamed prisoner intended to hurt him, and that he was afraid of being hurt or killed, without any further details, sufficient to make the defendants aware

9

of a substantial risk of serious harm." *Id*. at 1236. Admitting that "this question is a close one," the court concluded "that our precedent does not allow [the] deliberate-indifference claim to proceed." *Id*.

Critical to that conclusion was Eleventh Circuit precedent requiring that "officials must possess enough details about a threat to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'" *Id*. (citing *Brooks*, 800 F.3d at 1301 and *Brown*, 894 F.2d at 1537). The court further recognized "[t]he unfortunate reality is that 'threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm.'" *Id*. (quoting *Prater v. Dahm*, 89 F.3d 538, 542 (8th Cir. 1996)). And it was emphasized that something more is required in order to elevate the risk of harm to the level of "substantial" as required for a constitutional violation. *Id*. ("Successful deliberate-indifference claims will generally require some further reason—beyond the plaintiff having informed the defendant officers of the threat—that a prison official could have concluded that a particular threat evidenced a substantial threat, rather than the mere possibility, of serious harm."). An inmate thus must give prison officials sufficient information to "enable[e] them to conclude that the risk was substantial and not merely possible." *Id*.

The court deemed the information provided by the plaintiff in *Marbury* to be insufficient as a matter of law to satisfy that standard:

> Marbury's argument is essentially that every prisoner who tells prison officials about an unspecified threat from an unspecified inmate without more is entitled to protective custody or a transfer. But, as already explained, our caselaw establishes a higher standard for deliberate indifference. To be clear, Marbury was not required to identify the person who was threatening him by name, or even necessarily to give the defendants advance notice of a potential attack, so long as other facts put the defendants on notice that he faced a substantial risk of serious harm. … And because Marbury has not presented anything else that would bolster the unspecified threat, he has not met the requirement of showing deliberate indifference to a substantial risk of serious harm.

10

*Id*. at 1237 (footnotes omitted).  The court additionally explained that "[the plaintiff's] statement that an another inmate told him another inmate intended to harm him is precisely the type of vague statement that conveys nothing about the nature of the anticipated risk that we cautioned in *Rodriguez*[5] would not rise to the level of deliberate indifference to a substantial risk."  *Id*.  "At most, the evidence … put forward would allow a jury to conclude that [the defendant] was put on notice that [the plaintiff] faced some unspecified risk of harm to his well-being—not that she was aware he faced the type of substantial risk of serious harm necessary to establish deliberate indifference."  *Id*. at 1238.

Among the authorities cited as persuasive in *Marbury* was the Eight Circuit's decision in *Prater v. Dahm*, 89 F.3d 538 (8th Cir. 1996).  *See Marbury*, 936 F.3d at 1236 n.26.  Approximately six weeks before *Marbury* was released, the Eight Circuit also released another similar decision in *Blair v. Bowersox*, 929 F.3d 981 (8th Cir. 2019).  The claim for deliberate indifference in *Blair* arose from a violent attack against an inmate after being released into the general prison population.  *Id*. at 983.  The plaintiff inmate testified that he had requested to be placed into protective custody after being subjected to a prior attack "because he believed that someone had a 'hit' out on him":

> I told him I felt at the time or believed at that time it had something to do with my murder case, the case—the case that I'm doing time for.  I believe that some of my—I believe that my victim had some relatives at that institution.  And that was maybe the reason why I was stabbed because I didn't know why I was stabbed.  I just got there.

---

[5] *Marbury* distinguished the earlier decision in *Rodriguez v. Secretary for Dept' of Corrections*, 508 F.3d 611 (11th Cir. 2007), due to the level of specificity given about the threat in that case, *i.e.*, the plaintiff inmate had been directly informed by members of his former gang that he would be killed if released into the general prison population.  *See Marbury*, 936 F.3d at 1236-37.  Considering the details there involved, prison officials "could have reasonably inferred that there was a substantial, not merely possible, risk of harm."  *Id*. at 1327.

11

*Id*. at 984-85.  At a classification hearing, the plaintiff again stated that "he believed he had a hit out on him, and he requested transfer to another institution." *Id*. at 985.  The plaintiff further testified that "he wrote [the warden] three or four letters … requesting protective custody or, in the alternative, a transfer." *Id*. at 986.  However, the plaintiff was released to general population and suffered an attack two days later. *Id*. at 987.

Affirming the trial court's entry of judgment as a matter of law in favor of the defendants, the Eight Circuit concluded (as the Eleventh Circuit later did in *Marbury*) that vague allegations of a "hit" were insufficient to support a finding of deliberate indifference:

> Even if Blair had voiced his concerns to Terry about there being a hit out on him, there is no evidence Blair knew who ordered it or who Blair's enemies in general population may have been.  A prison official does not necessarily act with deliberate indifference by failing to place an inmate "in protective custody based on his general fear for his safety."  *Robinson v. Cavanaugh*, 20 F.3d 892, 895 (8th Cir. 1994) (per curiam).  We have previously considered similar facts in *Davis v. Scott*, 94 F.3d 444 (8th Cir. 1996), where an inmate was injured shortly after entering a facility's general population.  The inmate in *Davis* was housed in protective custody because of the presence of known enemies in the prison's general population. *Id*. at 445.  After his known enemies left the facility, prison officials held a housing classification hearing for him. *Id*. at 446.  The inmate asked for continued protective custody because he feared that friends of his departed enemies who remained in general population might try to harm him there, though he could not provide names for any such "would-be attackers." *Id*. at 447.  We held that the prison officials did not act with deliberate indifference in releasing him to general population because his statements were "vague and unsubstantiated" and did not constitute "solid evidence ... of an identifiable serious risk to [his] safety." *Id*.
>
> Blair's statements to Terry were speculative and non-specific.  Blair's stated suspicions are insufficient to show Terry knew of a specific risk to Blair in a return to general population. Mahasin's apparently unprovoked [first] attack was never connected to anyone else.  Blair's theory of the existence of a hit being placed on him had no evidentiary support beyond his suspicions.  "[N]either unsupported conjecture nor negligence regarding a substantial risk of serious harm ... is sufficient to prove deliberate indifference." *Lenz v. Wade*, 490 F.3d 991, 996 (8th Cir. 2007) (citing *Farmer*, 511 U.S. at 835, 114 S.Ct. 1970).

*Id*. at 988.  Ultimately, the court concluded that "[t]here was no proof that any other inmate posed an immediate threat to Blair." *Id*.

The record evidence here, even when construed most favorably to Anderson, mirrors that in *Marbury* in all material respects. It is clear from his sworn submissions that Anderson based his underlying fear on prison gossip that his victim's family had put a "hit" on him. (Doc. 67 at p. 4: "So word had leaked out that the Bailey family had put a hit out on Anderson's life"; Doc. 67-1 at p. 2: "I wrote several request slips about my belief that the rumors about the 'hit' was valid"; Doc. 69-1 at pp. 1-2: "I had told the Defendants in advance of this incident on numerous occasions how I had been hearing a 'hit' was out on my head"). Such vague and conclusory reports to prison officials are precisely the type deemed insufficient as a matter of law in *Marbury*. 936 F.3d 1237. (Doc. 39-3 at pp. 7-8: informing Anderson that more detailed, verifiable information was needed). And like *Marbury*, Anderson "has not presented anything else that would bolster the unspecified threat." *Id*. *See also Blair*, 929 F.3d at 988 ("Blair's theory of the existence of a hit being placed on him had no evidentiary support beyond his suspicions.").

*Marbury* expressly cautions that "awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." 936 F.3d at 1238 (citations omitted) (italics in original). It likewise is settled that "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Brown*, 894 F.2d at 1537 (citation omitted). The record evidence supports no greater finding here. Because Anderson cannot present sufficient evidence that the defendants were "aware that he faced the type of substantial risk of serious harm necessary to establish deliberate indifference," he cannot be permitted to proceed beyond the summary judgment stage.[6]

---

[6] For greater context, it again should be noted that the evidence reflects action being taken to identify and transfer the son of Anderson's murder victim to another facility in December 2015. (Doc. 39-2 at pp. 5-6). Other than a short period in late 2017/early 2018, Anderson remained at Ventress (Doc. 39-3 at pp. 6-8), and no evidence has been presented that any inmate attempted to effectuate a "hit" on Anderson during the multi-year period preceding May 2018.

> C. **Anderson has failed to present sufficient evidence of a causal connection between any protected activity and his transfer among institutions.**[7]

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (citation omitted). To prevail on a retaliation claim, a prisoner must establish (1) that he engaged in speech that was constitutionally protected, (2) that he suffered an adverse action that would likely deter a person of ordinary firmness from engaging in such speech, and (3) that there was a causal relationship between the retaliatory action and his protected speech. *See Hall v. Adm'r, Fla. Civ. Commitment Ctr.*, No. 21-13160, 2022 WL 4100705, at *1 (11th Cir. Sept. 8, 2022) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

It is well settled at this point that "filing lawsuits and administrative grievances" is conduct protected by the First Amendment. *See Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986) ("This type of retaliation violates both the inmate's right of access to the courts … and the inmate's First Amendment rights.") (citations omitted). It equally is settled that transferring an inmate to a different institution can constitute a form of retaliation. *See Bridges v. Russell*, 757 F.2d 1155 (11th Cir. 1985). Anderson's retaliation claim thus rises or falls on whether there is a causal relationship between any protected conduct and his transfer from Ventress to Holman.

"The causal connection inquiry asks 'whether the [officials] were subjectively motivated to discipline because [the prisoner] complained of some of the conditions of his confinement.'" *O'Bryant*, 637 F.3d at 1212 (quoting *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008)). In order to evaluate the underlying motivation, courts must apply a burden-shifting framework.

---

[7] The Amended Complaint fails to contain a retaliatory transfer claim. (Doc. 13). Nonetheless, because Anderson's prior submission was construed to contain such a claim (*see* Docs. 4 & 5), and considering that the defendants addressed the claim in their Answer and Special Report (Doc. 39), the undersigned will elect to address the merits.

"Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm [*i.e.,* disciplinary action], the burden of production shifts to the defendant." *Mosley,* 532 F.3d at 1278 (citation omitted). "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on … summary judgment." *Id*. (citation omitted).

Anderson has not met his initial burden of presenting evidence that the filing of this lawsuit was a motivating factor behind his transfer. First, Anderson has made no allegation as to which of the defendants, if any, were involved in the transfer decision. Because the reclassification/transfer form was signed by "Warden or Representative" (Doc. 39-3), perhaps Warden Jones could be a proper defendant. But the remaining defendants would be entitled to summary judgment on Anderson's retaliation claim. Second, Anderson has not presented evidence that Warden Jones or any other involved person actually considered the lawsuit as a basis for the transfer. All of Anderson's allegations in that regard are conclusory and speculative:

> I'm at Holman corr facility … because of the 28 USC 1983 Civil Suit.

(Doc. 4 at p. 1);

> Then after he got stabbed he got transferred to a level V prison as retaliation.

(Doc. 67 at p. 3);

> The transfer was in retaliation. Because word was traveling to the d.o.c. officials that he was going to file a lawsuit against them because he was saying that he told them this was going to happen.

(*Id*. at p. 4);

> Still, the Defendants only transferred him to Holman Prison afterwards. And it was done in retaliation for him filing this lawsuit. Because they know that I informed them all on a regular basis that my life was in danger because of the hit that was put out on me.

(*Id*. at p. 6); and

15

> But when it came to them (the administration at Ventress) wanting to transfer Anderson, because of the situation with inmate Cates had reached the level of a violent attack on Anderson's life, and the word had seeped out that Anderson was going to seek redress for their failure to protect him after he had forewarned them, that the d.o.c. immediately had him transferred then.

(*Id*. at p. 10). Such "conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted); *see also Harris v Ostrout,* 65 F.3d 912, 916 (11th Cir. 1995) ("Appellant also produced nothing, beyond his own conclusory allegations, suggesting that Collins' actions in compliance with the strip search regulations were motivated by a retaliatory animus. In the absence of such evidence, summary judgment was appropriate.").[8]

What the record evidence shows is that Anderson received a Due Process hearing on June 7, 2018 on the allegation that "you and another inmate were fighting with a knife." (Doc. 39-3 at p. 5). Based upon the evidence presented at that hearing, the decision was made to increase Anderson's custody level. (*Id*.: "Due to your negative behavior, the Board recommends a custody increase to Medium SL V and you transfer to any SL V facility … ."). Nothing in the record suggests that any of the defendants were involved in the factual determination and/or recommendation made at the Due Process hearing. Nor is there any evidence suggesting that the persons involved in the Due Process hearing were motivated by, or even had knowledge of, a threatened or pending lawsuit.

---

[8] There is no evidence in the record that any of the defendants had knowledge of Anderson's lawsuit at the time of his transfer in June 2018. The docket reflects that the Return Receipt Card for service of process was signed as to each of the defendants in late August 2018. (Docs. 30 through 34). Anderson appears to be asking the court to impute knowledge to the defendants solely by virtue of rumors allegedly circulating among inmates that Anderson intended to take legal action. The undersigned cannot engage in such a speculative leap.

The record further contains a sworn affidavit from Classification Specialist Woods affirmatively stating that "[Anderson] was not transferred from Ventress Correctional Facility due to retaliation" but "[b]ased on classification criteria for Close Custody." (Doc. 39-3 at p. 2). Woods explained under oath that the ADOC Classification Manual expressly permits confinement in Close Custody when an inmate has engaged in "fighting with a weapon." (*Id*.). The sworn affidavit of Warden Jones likewise confirms that the transfer was not based on retaliation, *i.e.*, "Anderson was transferred to Holman on June 12, 2018, due to his approved Security Level V Medium Custody." (Doc. 39-14 at p. 1). With no evidence of a causal connection between any protected conduct and the transfer from Ventress to Holman, Anderson's retaliation claim fails as a matter of law. *See O'Bryant*, 637 F.3d at 1219 ("O'Bryant's claim fails because he has not presented evidence of retaliatory animus on the part of either Defendant Herring or Defendant Baines.") (citing *Harris*, 65 F.3d at 916).

Even assuming Anderson could make a *prima facie* case for retaliatory animus, his retaliation claim would still fail because the evidence reflects that he was found guilty of "fighting with a knife" and would have been subject to reclassification/transfer regardless of whether a lawsuit had been threatened or filed. *See O'Bryant*, 637 F.3d at 1219-20 ("Here, O'Bryant was convicted of disciplinary charges and would have suffered the same adverse action even if he had not engaged in the grievances."; "Any possible causal connection between the protected activity … and the harm … is severed since the harm is not in reaction to any protected activity, but directly due to an improper activity."); *see also Smith v. Governor for Alabama*, 562 F. App'x 806, 815 (11th Cir. 2014) ("[T]he defendants were entitled to summary judgment because the reason for transferring Smith … would have applied regardless of whether a lawsuit had been filed.") (citing *Mosely*, 532 F.3d at 1278).

17

V.  **Conclusion**

Accordingly, for the reasons stated above, the undersigned Magistrate Judge hereby **RECOMMENDS** as follows:

1. that the defendants' Answer and Special Report (Doc. 39) be construed as a motion for summary judgment;

2. that summary judgment be granted in favor of all of the defendants as to Anderson's claims for monetary damages against them in their official capacities;

3. that summary judgment be granted in favor of all of the defendants as to Anderson's claim for deliberate indifference; and

4. that summary judgment be granted in favor of all of the defendants as to Anderson's claim for retaliatory transfer.

It is **ORDERED** that any objections to this Recommendation must be filed by March 29, 2023.  An objecting party must identify the specific portion of the factual findings or legal conclusions to which the objection is made and must describe in detail the basis for the objection.  Frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to this Recommendation shall bar a party from a de novo determination by the District Court of any factual findings or legal conclusions contained herein and shall waive the right of the party to challenge on appeal any subsequent order that is based on factual findings and legal conclusions accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice.  11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

**DONE** this the 15th day of March 2023.

CHAD W. BRYAN
UNITED STATES MAGISTRATE JUDGE